**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| SHAVON JONES,<br>on behalf of Plaintiff and the class members<br>described below,<br><br>Plaintiff,<br><br>v.<br><br>ADVANCE.CASH, a limited liability company;<br>MAKES CENTS, INC.,<br>DAVID JOHNSON;<br>KIRK MICHAEL CHEWNING;<br>CANE BAY PARTNERS VI, LLLP;<br>DIMENSION CREDIT (CAYMAN), L.P.;<br>STRATEGIC LINK CONSULTING, LP;<br>ESOTERIC VENTURES, LLC;<br>INFOTEL INTERNATIONAL LTD.;<br>M. MARK HIGH, LTD.;<br>and DOES 1-20,<br><br>Defendants. | ) | DEMAND FOR TRIAL BY JURY |

**COMPLAINT – CLASS ACTION**

1. Plaintiff Shavon Jones brings this action to secure redress from predatory and unlawful loans (such as Exhibits A-B) made by Defendants (a) Advance.Cash, (b) Makes Cents, Inc., (c) David Johnson; (d) Kirk Michael Chewning; (e) Cane Bay Partners VI, LLLP; (f) Dimension Credit (Cayman), L.P.; (g) Strategic Link Consulting, LP; (h) Esoteric Ventures, LLC; (i) InfoTel International Ltd.; (j) M. Mark High, Ltd.; and (k) Does 1-20.

2. Plaintiff alleges violation of the rate limitations of the Indiana Uniform Consumer Credit Code (Count I) and collection of unlawful debts in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts II-III).

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction under 18 U.S.C. §1964 (RICO), 28 U.S.C. §1331 (general federal question), 28 U.S.C. §1332(d) (Class Action Fairness Act), and 28 U.S.C. §1367 (supplemental jurisdiction). There are more than 100 class members. On information and

belief, the amount in controversy on a classwide basis exceeds $5 million, exclusive of interest and costs.

4. This Court has personal jurisdiction over each Defendant because they knowingly participated in the making of unlawful loans to Indiana residents.

5. Venue is proper because the loans were made to a resident of Noblesville, Indiana.

6. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92 Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES

### Plaintiff

7. Plaintiff (Ms.) Shavon Jones is a resident of Noblesville, Indiana.

### Defendants

8. Defendant Advance.Cash purports to be a limited liability company organized under the law of the Mandan, Hidatsa, and Arikara Nation, also known as the Three Affiliated Tribes of the Fort Berthold Reservation ("Tribe"). It uses the address P.O. Box 10, Parshall, ND 58770.

9. Defendant Advance.Cash makes loans via the website https://advanceadmin.cash. (Exhibit C)

10. Defendant Makes Cents, Inc. purports to be a corporation chartered under the law of the Tribe. It claims to operate from the address 217 3rd Avenue NE, Parshall, ND 58770. It also uses P.O. Box 639, Parshall, ND 58770.

11. The website https://advanceadmin.cash has a copyright notice identifying Makes Cents, Inc. as the party responsible for its content. (Exhibit C)

12. In fact, the lending business conducted through https://advanceadmin.cash is beneficially owned and conducted by Defendants David Johnson ("Johnson") and Kirk Michael Chewning ("Chewning") through a web of interconnected companies, culminating with Defendant Cane Bay Partners VI, LLLP. On information and belief, Johnson and Chewning are partners, beneficial owners and officers of Defendant Cane Bay Partners VI, LLLP.

13. Defendant David Johnson is an individual who resides in the U.S. Virgin Islands. He may be found at 2205 Church Street, Suite 305, Christianstead, VI 00820.

14. Defendant Kirk Michael Chewning is an individual who may be found at 574 Vinings Springs Dr. SE 12, Mableton, GA 30126-5995, or P.O. Box 24313, Christiansted, U.S. Virgin Islands 00824-0313, or c/o Cane Bay Partners VI, LLLP, 2205 Church Street, Suite 305, Christiansted, U.S. Virgin Islands, 00820.

15. Defendant Cane Bay Partners VI, LLLP, is a limited liability limited partnership organized under the law of the U.S. Virgin Islands. Its address is 17 Church Street, Ste. 305, St. Croix, U.S. Virgin Islands 00820, or 2205 Church Street, Suite 305, Christiansted, U.S. Virgin Islands 00820. Its registered agent and office is Alexander Hamilton Trust Co., LLC, 53a Company Street, Christiansted, U.S. Virgin Islands 00820. Its sole business is the management and operation of online high-interest lenders. It describes itself as providing "decision analytics and underwriting services, business scorecard development, digital media and marketing services, vendor analysis and management, and compliance services." (https://canebayvi.com/)

16. Defendant Dimension Credit (Cayman), L.P. is a limited partnership entity based in the Cayman Islands. It may be served c/o Vector Capital Corporation, att'n Roy Kelvin, One Market Street, Steuart Tower, 23d floor, San Francisco, CA 94105. On information and belief, it is owned and controlled, directly or indirectly, by Chewning. It describes itself as "[a] specialty finance firm focused on direct lending." (https://dimensioncredit.com/)

17. Defendant Strategic Link Consulting, LP is a limited partnership based in the state of Texas. It is an affiliate of Cane Bay Partners VI, LLLP and controlled by Chewning. It may be

served c/o Kim Anderson, Chief Executive Officer, 2015 Vaughn Road NW, Suite 575, Kennesaw, GA 30144-7802. Its registered agent and office is National Registered Agents, Inc., 1999 Bryan St., Ste. 900, Dallas, TX 75201. It describes itself as a "consumer specialty finance" company and states that it "has the backing of a $4.5B private equity company based in California." (https://slchq.com/why-choose-us/)

18. Defendant Esoteric Ventures, LLC is a limited liability company organized under the law of the state of Utah. It registered MaxLend as d/b/a with the state of Utah. It also does business as Max Touch Services. It is an affiliate of Cane Bay Partners VI, LLLP and under the control of Chewning. It may be served at 2015 Vaughn Road NW, Suite 575, Kennesaw, GA 30144, att'n Kim Anderson, Chief Executive Officer. Its registered agent and office is National Registered Agents, Inc., 1108 E. South Union Avenue, Midvale, UT 84047.

19. Defendant InfoTel International Ltd. is a company based in Belize. It does business as Voyse International. It is an affiliate of Cane Bay Partners VI, LLLP under the control of Chewning. It may be served at 2015 Vaughn Road NW, Suite 575, Kennesaw, GA 30144, att'n Kim Anderson, Chief Executive Officer.

20. Defendant M. Mark High, Ltd., is a company based in Belize. It is an affiliate of Cane Bay Partners VI, LLLP under the control of Chewning. It may be served to the attention of Dean Molina, 5570 Princess Margaret Drive, Belize City, Belize. Its registered agent and office is Business Basics VI, LLC, Royal Palms Professional Bldg., 9053 Estate Thomas, Suite 101, Charlotte Amalie, U.S. Virgin Islands.

## FACTS

### History of Defendants' Lending Enterprise

21. Defendants initially conducted an Internet lending business using the website www.maxlend.com.

22. The domain www.maxlend.com was first registered in 2005, but the website contained no actual content until mid-2013.

23. Domain name registration records from 2010 reveal that the registrant's address was in the U.S. Virgin Islands. (Exhibit D)

24. MaxLend's website archived on September 21, 2013 makes no reference to any tribal ownership, and instead says "P.O. Box 1793, Belize City, Belize C.A." (Exhibit E)

25. In early 2014, MaxLend "moved" from supposedly being an offshore lender in Central America to being a purported tribal lender in rural North Dakota.

26. In fact, the lending business was not operated from either Belize or North Dakota.

27. Beginning in 2014, MaxLend claimed to be a "tribal lending entity" and therefore is entitled to invoke tribal sovereign immunity.

28. In fact, the Tribe has no significant involvement in the operation of the lending business.

29. Furthermore, the principal economic benefit of the activities of MaxLend is received by non-Native American persons.

30. Defendants Cane Bay Partners VI, LLLP, Johnson, and Chewning actually ran the lending business conducted via www.maxlend.com, directly or through other entities they own.

31. Defendants Dimension Credit (Cayman), L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel International Ltd., and M. Mark High, Ltd. are held out by Chewning as providing a comprehensive package of services for the lending enterprise described herein, including website design, marketing, underwriting, call center coverage for the contact numbers and email addresses on the websites and loan documents, training, loan approval, and access to credit used to fund the loans. On information and belief, Dimension Credit (Cayman), L.P. provides funding to make the loans described herein.

32. The Tribe contracts with Cane Bay to provide management consulting, service provider analysis, and risk management services to MaxLend. Cane Bay in turn has Defendants Dimension Credit (Cayman), L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel International Ltd., and M. Mark High, Ltd. provide the necessary services to make, service and

collect the loans.

33. The Chief Portfolio Officer of MaxLend, Darin Thomason, is a non-member of the Tribe who lives in Texas.

34. After repeated challenges to the conduct of the lending business under the name MaxLend, Defendants changed the name under which the business was conducted to Makes Cents, Inc., and the website to https://makescentsinc.com. (Exhibit F)

35. Defendants subsequently adopted the name Advance.Cash for the lending business.

36. The website https://makescentsinc.com refers to Advance.Cash. (Exhibit F, pp. 1-2 of 6)

## FACTS RELATING TO PLAINTIFF

37. Plaintiff obtained two loans via the Advance.Cash website:

| Date | Amount | Disclosed APR | Exhibit |
|---|---|---|---|
| 6/6/24 | $300 | 648.22% | A |
| 8/5/24 | $700 | 544.62% | B |

38. Exhibits A-B represent standard form loan agreements used by Defendants on a regular basis.

39. Defendants regularly make or participate in the making of loans to individuals in Indiana at such rates.

40. The loans were obtained for personal, family or household purposes and not for business purposes.

41. Defendants sought out Indiana residents for such loans.

42. Plaintiff has made payments on the loans.

43. Defendants claim amounts are still owed on the loans.

## INDIANA REGULATION OF LENDING

44. The Indiana Uniform Consumer Credit Code establishes a maximum loan finance charge of 36%.

45. Ind. Code § 24-4.5-3-201 authorizes a maximum 25% per annum for consumer loans other than supervised loans. It provides:

> (1) Except as provided in subsections (7) and (9), with respect to a consumer loan, other than a supervised loan (as defined in section 501 [IC 24-4.5-3-501] of this chapter), a lender may contract for a loan finance charge, calculated according to the actuarial method, not exceeding twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter). . . .

46. With respect to supervised loans, the Indiana Uniform Consumer Credit Code, Ind. Code § 24-4.5-3-508, provides:

> Loan finance charge for supervised loans.
>
> (1) With respect to a supervised loan, including a loan pursuant to a revolving loan account, a supervised lender may contract for and receive a loan finance charge not exceeding that permitted by this section.
>
> (2) The loan finance charge, calculated according to the actuarial method, may not exceed the equivalent of the greater of:
>
> > (a) the total of:
> >
> > > (i) thirty-six percent (36%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) [IC 24-4.5-3-107(3)] of this chapter) which is two thousand dollars ($2,000) or less;
> > >
> > > (ii) twenty-one percent (21%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than two thousand dollars ($2,000) but does not exceed four thousand dollars ($4,000); and
> > >
> > > (iii) fifteen percent (15%) per year on that part of the unpaid balances of the principal (as defined in section 107(3) of this chapter) which is more than four thousand dollars ($4,000); or
> >
> > (b) twenty-five percent (25%) per year on the unpaid balances of the principal (as defined in section 107(3) of this chapter). . . .

47. There is also a provision for small loans, Ind. Code § 24-4.5-7-101 *et seq.*, but it does not authorize the rates charged by Defendants, and requires that small loans conform to other requirements that Defendants' loans do not comply with.

48. Ind. Code. § 24-4.5-7-201, "Limitations on finance charges," provides:

> (1) Finance charges on the first two hundred fifty dollars ($250) of a small loan are limited to fifteen percent (15%) of the principal.

(2) Finance charges on the amount of a small loan greater than two hundred fifty dollars ($250) and less than or equal to four hundred dollars ($400) are limited to thirteen percent (13%) of the amount over two hundred fifty dollars ($250) and less than or equal to four hundred dollars ($400).

(3) Finance charges on the amount of the small loan greater than four hundred dollars ($400) and less than or equal to five hundred fifty dollars ($550) are limited to ten percent (10%) of the amount over four hundred dollars ($400) and less than or equal to five hundred fifty dollars ($550).

(4) The amount of five hundred fifty dollars ($550) in subsection (3) is subject to change under the provisions on adjustment of dollar amounts (IC 24-4.5-1-106). However, notwithstanding IC 24-4.5-1-106(1), the Reference Base Index to be used under this subsection is the Index for October 2006.

49. The amount of finance charge provided for in Exhibits A-B is more than double that permitted in Indiana under any provision.

50. Ind. Code § 24-4.5-1-201, "Territorial application," provides:

(1) Except as otherwise provided in this section, this article applies to sales, leases, and loans made in this state and to modifications, including refinancings, consolidations, and deferrals, made in this state, of sales, leases, and loans, wherever made. For purposes of this article, the following apply: . . .

(c) A loan or modification of a loan agreement is made in this state if a writing signed by the debtor and evidencing the debt is received by the lender or a person acting on behalf of the lender in this state.

(d) Except as provided in subdivisions (e) and (f), a sale, lease, or loan transaction occurs in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction with a creditor or a person acting on behalf of the creditor in another state and the creditor or the person acting on behalf of the creditor has advertised or solicited sales, leases, or loans in Indiana by any means, including by mail, brochure, telephone, print, radio, television, the Internet, or electronic means.

(e) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction secured by an interest in land located outside Indiana.

(f) A sale, lease, or loan transaction does not occur in Indiana if a consumer who is a resident of Indiana enters into a consumer sale, lease, or loan transaction at a creditor's place of business in another state.

For purposes of subdivisions (a) through (c), an offer is received by a creditor or a person acting on behalf of the creditor in Indiana if the offer is physically delivered, or otherwise transmitted or communicated, to a person who has actual or apparent authority to act for the creditor or the person acting on behalf of the creditor in Indiana, regardless of whether approval, acceptance, or ratification by any other agent or representative of the creditor or

the person acting on behalf of the creditor in another state is necessary to give legal consequence to the consumer credit transaction. . . .

(5) Notwithstanding other provisions of this section:

(a) except as provided in subsection (2), this article does not apply if the buyer, lessee, or debtor is not a resident of this state at the time of a credit transaction and the parties then agree that the law of the buyer's, lessee's, or debtor's residence applies; and

(b) this article applies if the buyer, lessee, or debtor is a resident of this state at the time of a credit transaction and the parties then agree that the law of this state applies.

(6) Except as provided in subsection (5), the following agreements by a buyer, lessee, or debtor are invalid with respect to consumer credit sales, consumer leases, consumer loans, or modifications thereof, to which this article applies:

(a) An agreement that the law of another state shall apply.

(b) An agreement that the buyer, lessee, or debtor consents to the jurisdiction of another state.

(c) An agreement that fixes venue. . . .

(8) If a creditor or a person acting on behalf of the creditor has violated the provisions of this article that apply to the authority to make consumer loans (IC 24-4.5-3-502), the loan is void and the debtor is not obligated to pay either the principal or loan finance charge, as set forth in IC 24-4.5-5-202.

51. Ind. Code § 24-4.5-5-202, "Effect of violations on rights of parties," provides:

. . . (3) A debtor is not obligated to pay a charge in excess of that allowed by this Article, and ***if the debtor has paid an excess charge the debtor has a right to a refund***. A refund may be made by reducing the debtor's obligation by the amount of the excess charge. If the debtor has paid an amount in excess of the lawful obligation under the agreement, the debtor may recover the excess amount from the person who made the excess charge or from an assignee of that person's rights who undertakes direct collection of payments from or enforcement of rights against debtors arising from the debt.

(4) ***If a debtor is entitled to a refund and a person liable to the debtor refuses to make a refund within a reasonable time after demand, the debtor may recover from that person a penalty in an amount determined by a court not exceeding the greater of either the amount of the credit service or loan finance charge or ten (10) times the amount of the excess charge. If the creditor has made an excess charge in deliberate violation of or in reckless disregard for this Article, the penalty may be recovered even though the creditor has refunded the excess charge.*** No penalty pursuant to this subsection may be recovered if a court has ordered a similar penalty assessed against the same person in a civil action by the department (IC 24-4.5-6-113). With respect to excess charges arising from sales made pursuant to revolving charge accounts or from loans made pursuant to revolving loan accounts, no action pursuant to this subsection may be brought

more than two (2) years after the time the excess charge was made. With respect to excess charges arising from other consumer credit sales or consumer loans, no action pursuant to this subsection may be brought more than one (1) year after the due date of the last scheduled payment of the agreement pursuant to which the charge was made. . . .

(7) If the creditor establishes by a preponderance of evidence that a violation is unintentional or the result of a bona fide error, no liability is imposed under subsections (1), (2), and (4) and the validity of the transaction is not affected.

(8) In any case in which it is found that a creditor has violated this Article, the court may award ***reasonable attorney's fees*** incurred by the debtor. . . . (Emphasis added)

**RENT-A-TRIBE SCHEMES**

52. In an attempt to evade prosecution under usury laws of states like Indiana, non-tribal owners of online payday lending businesses frequently engage in a business model commonly referred to as a "rent-a-tribe" scheme.

53. In such schemes, non-tribal payday lenders create an elaborate charade claiming their non-tribal businesses are owned and operated by Native American tribes.

54. The illegal payday loans are then made in the name of a Native American tribal business entity which purport to be shielded from state and federal laws prohibiting usury due to tribal sovereign immunity. However, the tribal lending entity is simply a facade for an illegal lending scheme; all substantive aspects of the payday lending operation—funding, marketing, loan origination, underwriting, loan servicing, electronic funds transfers, and collections—are performed by individuals and entities that are unaffiliated with the tribe.

55. In exchange for use of the tribe's name, the beneficial owner of the payday lending scheme pays the cooperating tribe a fraction of the revenues generated. While the percentage varies from scheme-to-scheme, the number is almost always in the single digits.

56. However, an entity must function as a legitimate "arm of the tribe" in order to fall under that tribe's sovereign immunity. *See Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1183 (10th Cir. 2010).

57. To determine if a particular entity is entitled to sovereign immunity, the majority of courts have adopted the framework laid out in *Breakthrough*, which analyzed "(1) [the entities']

method of creation; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) whether the tribe intended for the entities to have tribal sovereign immunity; (5) the financial relationship between the tribe and the entities; and (6) whether the purposes of tribal sovereign immunity are served by granting immunity to the entities." *Breakthrough* at 1183, 1187-88.

58. These so-called "tribal lenders" usually do not survive scrutiny when examined closely, since virtually all business functions occur far from tribal land, by nontribal members, and overwhelmingly benefit non-tribal members to such a degree that tribal involvement is effectively nil.

59. Where non-tribal individuals and entities control and manage the substantive lending functions, provide the lending capital necessary to support the operation, and bear the economic risk associated with the operation, they are not in fact "operated" by Native American tribes and, therefore, are not shielded by sovereign immunity.

60. Further, sovereign immunity, even if legitimately invoked, still does not turn an otherwise illegal loan into a legal one. *See, e.g., United States v. Neff,* 787 F. App'x 81 (3d Cir. 2019) (upholding criminal convictions of two individuals engaged in an online payday lending rent-a-tribe scheme; sovereign immunity does not transform illegal loans into legal ones, and "reasonable people would know that collecting unlawful debt is unlawful").

61. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

62. The excessive interest charges imposed by Defendants were intentional.

## COUNT I – INDIANA UNIFORM CONSUMER CREDIT CODE

63. Plaintiff incorporates paragraphs 1-62.

64. Because the loans made to Plaintiff violated the rate limits set by Indiana law, and the violation was intentional, Plaintiff and other borrowers are entitled to ten (10) times the amount of the excess charge.

## CLASS ALLEGATIONS

65. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

66. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made via https://www.advance.cash at more than 36% interest (all of its loans qualify) (c) on or after a date two years prior to the filing of this action.

67. Plaintiff may alter the class definition to conform to developments in the case and discovery.

68. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

69. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

70. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

71. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

72. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Damages as provided by statute;

ii. Attorney's fees, expenses and costs; and

iii. Such other or further relief as is appropriate.

**COUNT II – RICO**

73. Plaintiff incorporates paragraphs 1-62.

74. This claim is against Defendants Johnson, Chewning, Cane Bay Partners VI, LLLP, Dimension Credit (Cayman), L.P., Strategic Link Consulting, LP, Esoteric Ventures, LLC, InfoTel International Ltd., and M. Mark High, Ltd., each of whom is a RICO "person."

75. All loans made via https://www.advance.cash to Indiana residents are (a) unenforceable under Indiana law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Indiana law, where (c) the loan was made on or after a date four years prior to the filing of this action, and (d) the usurious rate is at least twice the enforceable rate (36%).

76. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

77. Advance.Cash is an enterprise affecting interstate commerce, in that it is located outside of Indiana and makes loans to Indiana residents via the Internet.

78. The other Defendants named herein are associated with this enterprise, as set forth above, in connection with the making and collection of loans to Indiana residents.

79. Defendants conducted or participated in the conduct of the affairs of "MaxLend" through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

80. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

81. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

82. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made via https://www.advance.cash at more than 72% interest (c) which loan was made on or after a date four years prior to the filing of this action.

83. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

84. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether the loans at issue are "unlawful debts" as defined in RICO.

    b. Whether Advance.Cash is an "enterprise."

    c. Whether the Defendants named herein are associated with Advance.Cash.

    d. Whether the Defendants named herein conducted or participated in the affairs of Advance.Cash through a pattern of making and collecting unlawful loans.

85. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

86. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

87. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and

against Defendants for:

i. Treble damages;

ii. Attorney's fees, litigation expenses and costs of suit; and

iii. Such other or further relief as the Court deems proper.

**COUNT III – RICO**

88. Plaintiff incorporates paragraphs 1-62.

89. This claim is against Johnson and Chewning, who are the RICO "persons."

90. All loans made via https://www.advance.cash to Indiana residents are (a) unenforceable under Indiana law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Indiana law, where (c) the loan was made on or after a date four years prior to the filing of this action, and (d) the usurious rate is at least twice the enforceable rate (36%).

91. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

92. Advance.Cash and Cane Bay Partners VI, LLLP constitute an association in fact enterprise, existing for the purpose of making high-interest loans.

93. The association in fact enterprise affects interstate commerce, in that it has physical locations outside of Indiana and makes loans to Indiana residents via the Internet.

94. Defendants Johnson and Chewning are associated with the enterprise, in that they direct and control its lending activities.

95. Defendant Johnson and Chewning conducted or participated in the conduct of the affairs of the association in fact enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. § 1962(c).

96. Plaintiff was deprived of money as a result.

**CLASS ALLEGATIONS**

97. Plaintiff brings this claim on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

98. The class consists of (a) all individuals with Indiana addresses (b) to whom a loan was made via https://www.advance.cash at more than 72% interest (c) which loan was made on or after a date four years prior to the filing of this action.

99. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 40 class members.

100. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

    a. Whether the loans at issue are "unlawful debts" as defined in RICO.

    b. Whether "Advance.Cash" and Cane Bay Partners VI, LLLP constitute an association in fact "enterprise."

    c. Whether Defendants are associated with the enterprise.

    d. Whether Defendants conducted or participated in the affairs of the enterprise through a pattern of making and collecting unlawful loans.

101. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

102. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

103. A class action is superior for the fair and efficient adjudication of this matter, in that:

    a. Individual actions are not economically feasible.

    b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

    i. Treble damages;

    ii. Attorney's fees, litigation expenses and costs of suit; and

        iii.    Such other or further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Heather A. Kolbus
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)
Email address for service: courtecl@edcombs.com
Dedelman@edcombs.com
hkolbus@edcombs.com
ahuzyk@edcombs.com

**JURY DEMAND**

Plaintiff demands trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

**NOTICE OF ASSIGNMENT**

Please be advised that all rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

**DOCUMENT PRESERVATION DEMAND**

      Plaintiff hereby demands that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiff, class members, the events described herein, any third party associated with any telephone call, campaign, account, loan, sale or file associated with Plaintiff, and any account or loan or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiff demands that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.


                                             */s/ Daniel A. Edelman*
                                             Daniel A. Edelman